# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 21, 2001

## STATE OF TENNESSEE v. JERRY BREEDING

**Direct Appeal from the Criminal Court for Overton County**
**No. 3820     Leon C. Burns, Jr., Judge**

---

### No. M2001-00043-CCA-R3-CD - Filed January 25, 2002

---

The defendant appeals his conviction of aggravated robbery for the armed robbery of the Union Bank and Trust in Rickman, Tennessee.  We conclude that the defendant did not prove his claim of ineffective assistance of counsel and the record supports the trial court's finding that the defendant personally waived his right to testify.  Furthermore, the record reveals that the defendant introduced evidence about an uncharged crime in order to impeach testimony by a witness for the state and, therefore, cannot challenge the introduction of such evidence on appeal. The trial court properly fulfilled its duty to act as a thirteenth juror.  In addition, there is sufficient evidence to support the defendant's conviction for aggravated robbery.  The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Michael R. Giaimo, Livingston, Tennessee, for the appellant, Jerry Breeding.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; William Edward Gibson, District Attorney General; and Owen G. Burnett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Jerry Breeding, was indicted for theft of property with a value of over ten thousand dollars, unlawful possession of a handgun, and two counts of aggravated robbery.  The trial on the unlawful possession of a handgun charge was severed by an agreed order.  After a trial on the remaining charges, a jury found the defendant guilty of aggravated robbery and assessed a fine of eighteen thousand dollars.  The trial court imposed a fine of eighteen thousand dollars and ordered the defendant to serve thirty (30) years in prison as a career offender.  The defendant filed a timely motion for a new trial, which was denied by the trial court.  A timely notice of appeal followed.  The following four issues are raised in this appeal: (1) whether there was sufficient evidence to support the conviction for aggravated robbery, (2) whether the defendant received effective assistance of counsel, (3)  whether the trial court erred by allowing the state to question a witness about the defendant's uncharged criminal conduct, and (4) whether the trial court failed to perform its function as thirteenth juror.

# FACTS

Diane Sidwell and Vickie Harvey, tellers at the Union Bank and Trust in Rickman, Tennessee, testified at the defendant's trial about a bank robbery that occurred in March of 1996. Ms. Sidwell was working behind the teller counter when two men walked into the bank wearing stockings over their faces. One of the men had a gun and ordered Ms. Sidwell and Ms. Harvey to "get [their] hands up!" Ms. Sidwell immediately hit the silent alarm button located in her teller window. While the two tellers stood with their hands in the air, the gunman went behind the counter and emptied each teller's cash drawer into a cloth bag. Then the two men left the bank. Ms. Sidwell sounded the alarm a second time and went to lock the bank's door. As she was locking the door, she heard gravel spin and saw a light blue Mercury Cougar leaving the bank parking lot. Ms. Sidwell watched the car until it was out of sight and then called the Sheriff's Department to report the robbery. Ms. Sidwell could not identify either of the men because of the stockings but believed both men were Caucasian. She also noticed that they were both wearing gloves. Ms. Sidwell was not able to "identify" the license plate number of the car she saw leaving the bank after the robbery. At the request of police, she viewed a light blue Mercury Cougar a few hours after the robbery. Although Ms. Sidwell was unable to positively identify it as the car she saw earlier, she testified that it looked "exactly like" the light blue Mercury Cougar she saw after the robbery.

Ms. Harvey's testimony was substantially similar to Ms. Sidwell's. Ms. Harvey indicated that she followed Ms. Sidwell to lock the door to the bank and also saw a light blue Mercury Cougar leaving the bank parking lot. Ms. Harvey observed that the driver of the car was wearing a stocking over his face but was not able to "identify" the car's license plate number. Later that afternoon, Ms. Harvey was asked to independently view the same light blue Mercury Cougar as Ms. Sidwell. Like Ms. Sidwell, she indicated that it looked "exactly like" the one she saw leaving the bank after the robbery. Both tellers also testified that five hundred dollars in bait money was taken from each of their teller drawers. The bait money was exclusively in ten-dollar bills.

Randy Dodson, an assistant security officer for the Union Bank and Trust in Rickman, Tennessee, was called pursuant to bank policy after the robbery occurred. Mr. Dodson prepared a report indicating that a total of $17,594.00 had been stolen from the bank. This amount included one thousand dollars in bait money. As a matter of course, bait money is bundled together and placed in each teller's drawer with the rest of the money. The serial number of each bait bill is recorded on a form, which also identifies the teller drawer where the bait money is located. The bait money is not otherwise identifiable to someone other than the teller. Both Ms. Sidwell and Ms. Harvey had five hundred dollars in bait money in their teller drawer on the day of the robbery. Mr. Dodson identified the two bait money forms that listed the serial number for each of the bills that were taken from Ms. Sidwell's and Ms. Harvey's drawer.

Mr. Dodson's wife, also a bank employee, verified that she personally prepared the bait money taken from Ms. Harvey's drawer. Ms. Dodson testified that the serial numbers listed on the form were in her handwriting. During her testimony, Ms. Dodson was handed a ten-dollar bill and asked to determine whether it matched the serial number for any of the bills that she had prepared as bait money for Ms. Harvey's drawer. Ms. Dodson testified that the ten-dollar bill was one of the bait bills taken from Ms. Harvey's teller drawer.

Terry McBride and Gene Johnson, employees at Gene Johnson's Tires, testified about the ten-dollar bill identified by Ms. Dodson. Mr. McBride testified that the defendant used the ten-dollar bill to pay on his account a week after the robbery. Mr. Mc Bride had been alerted by the FBI that

the defendant was suspected of committing the robbery and had been asked to watch for ten-dollar bills. At approximately eight o'clock a.m., one week after the robbery, the defendant paid thirty dollars on his account with four five-dollar bills and one ten-dollar bill. Mr. McBride took the ten-dollar bill out of the register after the defendant left and gave it to his boss, Gene Johnson. Later that day, he saw someone from the sheriff's office come to the station and examine the bill. At ten-forty p.m., an FBI agent came to the station to retrieve the bill. At that time, Mr. McBride was asked to initial the bill in order to identify it as the one he had taken from the defendant earlier that day.

Mr. Johnson, the owner of the station, verified that the FBI had requested that Mr. Johnson and his employees hold any ten-dollar bills passed by the defendant. A week later, Mr. McBride brought him a ten-dollar bill, which the defendant had used to pay on his account. Mr. Johnson immediately called the sheriff's department to report what had happened and to give them the serial number from the bill. Later, someone from the sheriff's department asked Mr. Johnson to hold the bill. Mr. Johnson put the bill in an envelope and placed the envelope in his safe. He eventually turned the bill over to an FBI agent, who came to the service station to pick it up later that evening.

Debbie Moody was the defendant's girlfriend at the time of the robbery. Her sister, Tammy Arney, testified at the defendant's trial. Ms. Arney testified that at the time of the robbery, her sister owned a light blue Mercury Cougar, which was the one identified by both bank tellers. She further testified that she saw the defendant driving her sister's car near the bank on the day of the robbery. She also noticed that there was a male passenger in the car with the defendant.

Michael Moody, Debbie Moody's brother, also testified that he saw a light blue Mercury Cougar on the day of the robbery. Mr. Moody was working on his car in his driveway when he saw two men in a light blue Mercury Cougar drive past his house. Five or ten minutes later, he saw the Cougar return heading in the other direction. Both times the Cougar was following a tan four-door car. A few weeks later, he saw the defendant riding in the Cougar with his sister, Debbie Moody. The defendant asked Mr. Moody to come to his side of the car where the defendant showed him a "little blue bag" full of money. Mr. Moody also observed that the defendant bought a new set of chrome wheels, a new mig welder, a new air compressor, and had his car painted after the robbery.

At the time of the robbery, Bonnie Moody, Michael and Debbie Moody's mother, lived on the same road as Michael Moody. She testified that on the day of the robbery she also saw what she believed to be her daughter's light blue Mercury Cougar following a light tan car past her house. The road was a dead end with a wooded area at the end. Ms. Moody saw the two cars turn onto a dirt logging road and then return past Ms. Moody's home about ten minutes later. Ms. Moody could not, however, identify the occupants of either car.

During the testimony of Tammy Arney, Bonnie Moody, and Michael Moody, questions were raised about an unrelated criminal charge against the defendant, which had been dismissed. The specific facts of the charge were not discussed. However, the charge apparently involved both Michael Moody and the defendant. Both Ms. Moody and Ms. Arney admitted to disliking the defendant because of the unrelated incident involving one of their family members.

Vincent Bryant, a childhood acquaintance of the defendant, testified that he was at a gas station in Rickman on the day of the robbery. Mr. Bryant recalled that there was a ski boat with girls in bikini swimwear at the gas station. While watching the girls, Mr. Bryant noticed that the defendant and the defendant's brother were also at the gas station. He observed that they were in a Mercury Cougar that looked to be a grayish or silverish color. Mr. Bryant could only see the rear

of the Cougar because the ski boat was parked in between Mr. Bryant and the Cougar.

A friend of the defendant, Lonnie Greenwood, testified that he was riding in the car with the defendant and Debbie Moody a few years after the robbery. According to Mr. Greenwood, the defendant told him that the Union Bank and Trust in Rickman was a "pushover" as they drove past the bank. Mr. Greenwood's testimony was part of a plea bargain agreement on a charge that was pending against him when he gave police a statement inculpating the defendant in the instant charges.

Michael Hollerman, an inmate who was incarcerated with the defendant prior to his trial for the instant charges, testified about statements the defendant made to him concerning the robbery. According to Mr. Hollerman, the defendant admitted to him that he had robbed the Union Bank and Trust in Rickman. The defendant also indicated that his girlfriend's mother had seen him after the robbery driving a car that fit the description of the car used in the robbery. Mr. Hollerman reported his conversations with the defendant to authorities because he was concerned that the defendant was going to harm his girlfriend's mother.

Two witnesses testified for the defendant. Paschal Denson testified that he lived on the same road as Bonnie and Michael Moody. On the day of the robbery, Mr. Denson was home during the time that Bonnie and Michael Moody testified that they saw a light blue Mercury Cougar drive past their homes and return a few minutes later. According to Mr. Denson, he was waiting for the mail to arrive and was watching outside. Mr. Denson did not see a blue Mercury Cougar drive past his home. Additionally, Bobby Roberts testified that he saw the defendant immediately after the robbery at the defendant's home, which was in Gainesboro, Tennessee. Mr. Roberts was at a hardware store near the Union Bank and Trust in Rickman when he heard on a police scanner that the bank had been robbed. He immediately drove to the defendant's home and observed the defendant standing in "his garage smoking a cigarette."


## ANALYSIS

The defendant raises four issues in this appeal: (1) whether there is sufficient evidence to support the defendant's conviction, (2) whether he received effective assistance of counsel, (3) whether the trial court properly allowed testimony concerning an uncharged crime allegedly committed by the defendant, and (4) whether the trial court fulfilled its role as a thirteenth juror.


### I. Sufficiency of Evidence

The defendant contends that the evidence is insufficient to support the jury's finding that he committed aggravated robbery. The defendant concedes that there was sufficient evidence to establish that a robbery was committed but argues that the evidence was insufficient to identify him as the person who committed the robbery.

The defendant has the burden of demonstrating to this Court that the evidence is insufficient because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 322-25, 99 S. Ct. 2781 (1979), 61 L. Ed. 2d 560. On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This Court may not substitute its own inferences for those drawn by the trier of fact from circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The determination of identity is a question of fact for the jury to determine, after consideration of all the evidence. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Furthermore, the identity of an accused may be established by either direct evidence, circumstantial evidence, or a combination of the two. State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975). In the instant case, there was no direct evidence to establish the identity of the perpetrator. However, a conviction may be based entirely on circumstantial evidence when the facts are "'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone.'" State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985) (quoting State v. Crawford, 470 S.W.2d 610, 613 (1971)). There must be an evidentiary basis upon which the jury can "exclude every other reasonable theory or hypothesis except that of guilt." Pruitt v. State, 460 S.W.2d 385, 390 (1970). It is important to keep in mind, however, that "the standard for appellate review is the same whether the conviction is based upon direct or circumstantial evidence." State v. Vann, 976 S.W.2d 93, 111-12 (Tenn. 1998) (appendix).

Although circumstantial in nature, we conclude that the evidence taken as a whole is sufficient to support the defendant's conviction for aggravated robbery. Viewed in the light most favorable to the state, the evidence in the instant case established the following facts. Two, masked, Caucasian men robbed the Union Bank and Trust in Rickman at gun point. One of the men fled in a light blue Mercury Cougar. The defendant's girlfriend owned a light blue Mercury Cougar, identified by both bank tellers as looking "exactly like" the car they saw fleeing the bank after the robbery. Two witnesses, Tammy Arney and Vincent Bryant, observed the defendant driving his girlfriend's light blue Mercury Cougar on the day of the robbery. A week after the robbery, the defendant passed a ten-dollar bill at a service station, which was later identified as part of the five hundred dollars in bait money that was stolen from the bank. A few weeks after the robbery, Michael Moody saw the defendant with "a little blue bag" that was full of money. While driving past the bank sometime after the robbery, the defendant told Lonnie Greenwood that the bank was a "pushover." Finally, the defendant told Michael Hollerman that he had robbed a bank and was afraid that the authorities were "on to him." This issue is without merit.

## II. Ineffective Assistance of Counsel

The defendant contends that he received ineffective assistance of counsel at his trial. We begin by noting that the defendant's trial counsel filed a motion to withdraw after the motion for a new trial had been filed but before the trial court heard the motion. The trial court granted the motion to withdraw and appointed new counsel to represent the defendant in the hearing on his motion for a new trial and on appeal. At the defendant's request, new counsel amended the motion for a new trial to include a claim of ineffective assistance of counsel. As this Court has previously cautioned and the trial court reiterated to this defendant, ineffective assistance of counsel claims are best pursued in a post-conviction petition rather than on direct appeal. Indeed, once the merits of

-5-

the issue are addressed by this Court on direct appeal, the defendant may not revisit the issue in a post-conviction petition. See State v. Anderson, 835 S.W.2d 600, 607 (Tenn. Crim. App. 1992). The defendant expressly acknowledges the admonitions of the trial court and this Court but proceeds with his ineffective assistance of counsel claim in this direct appeal.

The defendant argues that his trial counsel was ineffective because (1) she failed to investigate the mental illness of Lonnie Greenwood, a state witness, and to impeach Mr. Greenwood on cross examination with information about such mental illness, (2) she failed to call Debbie Moody, the defendant's former girlfriend, to testify, (3) she failed to subpoena or call as witnesses various persons requested by the defendant, (4) she failed to subpoena business records from the service station where the defendant allegedly passed bait money, and (5) she refused the defendant's request to testify on his own behalf. Encompassed in the defendant's argument concerning his ineffective assistance of counsel claim is a claim that the defendant was denied his fundamental right to testify. Because the analysis for such a claim differs from an ineffective assistance of counsel claim, we will address that issue separately.

A claim of ineffective assistance of counsel raised on direct appeal is a mixed question of law and fact. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value to be given testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The trial court's conclusions of law, however, are reviewed de novo. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001). Thus, a trial court's findings of fact are reviewed de novo with a presumption of correctness, while a trial court's conclusions of law are reviewed de novo with no presumption of correctness.

In order to succeed on an ineffective assistance of counsel claim, the defendant must prove that the attorney's performance was deficient by showing that the advice given or services rendered fell below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, the defendant must prove that he was prejudiced by his counsel's deficient performance by showing that the result of the trial proceeding would have been different but for the attorney's error. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). The burden is on the defendant to prove both prongs of the test by clear and convincing evidence. State v. Burns, 6 S.W.3d 453, 461 n.5 (Tenn. 1999) (relying on State v. Anderson, 835 S.W.2d 600, 607 (Tenn. Crim. App. 1992).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation as long as choices are informed ones based upon adequate preparation. Henley, 960 S.W.2d at 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

In the instant case, the defendant's former counsel testified at the evidentiary hearing on the defendant's motion for a new trial. She testified that she made every effort to subpoena every witness that the defendant requested but acknowledged that she was unable to locate some of the

witnesses. The trial record reveals that she advised the defendant that she had not been able to subpoena several witnesses who could be important to the defense. She inquired, on the record, whether the defendant wished to proceed with the trial on that day without such witnesses. The trial judge also questioned the defendant, on the record, about whether he understood what trial counsel was saying and whether he wished to proceed. The defendant indicated that he understood and consistently responded that he wished to proceed with the trial without the witnesses. With respect to the defendant's allegation that trial counsel refused his request to call Debbie Moody as a witness, trial counsel testified that Ms. Moody appeared in the courtroom during the middle of the trial and said that she would hurt the defense if called as a witness. Trial counsel made a tactical decision not to call Ms. Moody based on her belief that Ms. Moody's testimony would not be beneficial to the defense. The defendant was not present during the conversation between Ms. Moody and trial counsel but was later informed by trial counsel that Ms. Moody would not be testifying because her testimony would not help the defense.

After hearing all the evidence, including testimony by the defendant, the trial court found that the defendant had failed to prove that he was prejudiced by trial counsel's alleged errors. We agree. Bare allegations are insufficient to support proof of the claim. Indeed, when an ineffective assistance of counsel claim is predicated upon counsel's failure to present witnesses or introduce evidence, such witness's testimony and evidence should be offered at the evidentiary hearing in order for the trial court to determine whether the failure to call a witness or introduce evidence prejudiced the defendant. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This defendant did not present testimony by Ms. Moody or any of the other people that he claims should have been called as witnesses to prove that their testimony would have helped the defense had they testified. The business records of the service station were not introduced to prove that they contained exculpatory information. The mental health records of Mr. Greenwood, alleged to have a lengthy history of serious mental illness, were not introduced to show what, if any, effect they would have had on Mr. Greenwood's credibility if they had been used to impeach his trial testimony.

We conclude that the defendant has not proven by clear and convincing evidence that the outcome of his trial would have been different but for the alleged errors made by trial counsel. Because the defendant must prove both that trial counsel's performance was deficient and that he was prejudiced by the deficient performance in order to prevail on an ineffective assistance of counsel claim, we need not reach the question of whether trial counsel's performance was deficient. Henley, 960 S.W.2d at 580; Goad, 938 S.W.2d at 370. Accordingly, the trial court's finding that the defendant received effective assistance of counsel is affirmed.

### III. Right to Testify

Encompassed within the defendant's allegation that he received ineffective assistance of counsel is the assertion that he was denied the right to testify. Specifically, the defendant alleges that he repeatedly asked trial counsel to call him as a witness and that after advising the defendant that it was not in his best interest to testify, trial counsel refused to call the defendant as a witness. The defendant maintains that he never acquiesced to his attorney's request that he not testify and that the decision not to testify was the unilateral decision of his attorney.

We begin by noting that the Tennessee Supreme Court, in Momon v. State, adopted a procedural safeguard to ensure that all future criminal defendants are aware of their right to testify and that they personally waive that right. 18 S.W.3d 152, 157 (Tenn. 1999). This procedural

requirement, however, was not a new constitutional rule that required retroactive application. Id. at 162-63. The defendant acknowledges that the procedural requirement is, therefore, inapplicable to this case because the supreme court's decision in Momon was filed after the defendant's trial. The defendant, however, cites to Momon to "underscore the fundamental nature of [the right to testify]."

Tennessee courts have long recognized that a criminal defendant has a fundamental constitutional right to testify. Momon, 18 S.W.3d at 157. Only the defendant may effectuate a valid waiver of this right. Id. at 161. In determining whether the defendant has personally waived the right to testify, this Court should "indulge every reasonable presumption against the waiver of a fundamental right." Id. at 162. The waiver of a defendant's right to testify will not be presumed from a silent record. Id. "In the absence of evidence to show that [a] defendant personally waived [the] right to testify, we must presume that he did not." State v. Simmons, No. M2000-01199-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 359 at * 6 (Tenn. Crim. App., at Nashville May 11, 2001).

In the instant case, the defendant's trial counsel corroborated that the defendant repeatedly told her, both before and during the trial, that he wanted to testify. She consistently responded to the defendant's requests by advising him against testifying. However, she also testified that it was ultimately the defendant's decision whether to testify. Trial counsel informed the defendant of the basis for her advice not to testify. In her opinion, the defendant's testimony would likely be impeached with his prior convictions; his testimony would possibly open the door to questioning about other bad acts; and she observed that the defendant's version of the events was not consistent with that of other witnesses. Trial counsel testified that she "knew he should never testify" but maintained that the final decision not to testify was made by the defendant. After being repeatedly advised that it was not in his best interest to testify, the defendant said "okay" and followed his attorney's advice.

The defendant denies ever agreeing with trial counsel not to testify. According to the defendant, he reiterated his request to testify even after his trial counsel advised him against it. The defendant testified that he believed that it was his decision whether to testify but that trial counsel refused to call him as a witness. In the defendant's words, "She wouldn't put me up there."

We conclude that the record does not preponderate against the trial court's finding that the defendant personally waived his right to testify. Although trial counsel strenuously advised the defendant not to testify on numerous occasions, the ultimate decision not to testify was the defendant's. The defendant admitted that he knew that he had a right to testify and that he knew that the decision whether or not to testify was his to make. Furthermore, the record reveals that the defendant was not afraid to insist upon a course of action different from that advised by his counsel. He made the final decision not to request a change of venue against the strong advice of his trial counsel. He also made the final decision to pursue an ineffective assistance of counsel claim on direct appeal against the strong advice of both the trial court and his appellate counsel. Based upon such information, the trial court was within its discretion to accredit trial counsel's testimony on the issue and conclude that the defendant made the decision to waive his right to testify. This issue is without merit.

### IV. Admission of Testimony Concerning Uncharged Crimes

The defendant next alleges that the trial court erroneously admitted testimony by a state's witness, Bonnie Moody, about a prior criminal charge against the defendant, which had been

dismissed. The criminal charge to which the defendant refers stemmed from an allegation that the defendant had inappropriate sexual relations with a minor, Jamie Moody. The state did not question Bonnie Moody, Jamie Moody's aunt, about the prior criminal charge during direct examination. Defense counsel, however, questioned her about the charge on cross-examination in order to show that Ms. Moody had a bias against the defendant. Defense counsel did not go into the specifics of the charge but questioned Bonnie Moody about whether she had "hard feelings" for the defendant because of the prior criminal charge. In response, the prosecution attempted to get into the specifics of the charge during re-direct examination of Ms. Moody. We note, however, that the trial court did not allow the state to question Ms. Moody about the details of the charge but instead immediately interrupted the prosecutor, admonished him for asking the question, and instructed the jury not to consider the testimony about such charge in their determination of the defendant's guilt.

In Tennessee, evidence that a criminal defendant has committed some other crime or bad act independent of that for which he is charged is generally inadmissible. Tenn. R. Evid. 404(b); State v. Howell, 868 S.W.2d 238, 254 (Tenn. 1993). However, if evidence that a defendant has committed an act separate and apart from the one for which the defendant is on trial is relevant to some material matter at issue in the case on trial and if its probative value is not outweighed by the danger of its prejudicial effect, the evidence may be admitted. Tenn. R. Evid. 404(b); Howell, 868 S.W.2d at 254. Furthermore, because of the risk of unfair prejudice to the defendant, Rule 404(b) establishes special procedures which must be followed before evidence of prior bad acts may be admitted. See Tenn. R. Evid. 404(b), Advisory Committee Comments. When a trial court substantially complies with the procedural requirements of the rule, its determination will not be overturned absent an abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

In the instant case, the trial court did not admit evidence of the prior criminal charge over the defendant's objection. Therefore, the predicate procedural requirements for admission of such evidence were not applicable. Indeed, it was the defendant who first introduced evidence of the fact that such a prior charge existed in order to show the bias of Bonnie Moody. When the state attempted to question Ms. Moody about the specifics of the charge on re-direct, the defendant objected, and the trial court sustained the objection. Further attempts by the prosecution to elicit the same information were interrupted by the trial court even before the defendant had the opportunity to object. In addition, the trial court gave a curative instruction to the jury instructing them to only consider the prior criminal charge in determining whether Ms. Moody had a bias against the defendant. The only testimony that Bonnie Moody gave about the prior criminal charge after the trial court's curative instruction to the jury was that her previous testimony about the charge was truthful and that she took the charge "very seriously."

We conclude that the trial court did not err with respect to the admission of testimony regarding the defendant's prior criminal charge. The defendant made a tactical decision to question Bonnie Moody about the existence of the charge in order to show her bias. He may not now challenge the admission of that evidence on appeal. Furthermore, the trial court did not admit testimony about the specific facts of the charge. In contrast, the trial court sustained two objections to the state's attempt to elicit such testimony and gave a curative instruction to the jury. This issue is without merit.

## V. **Thirteenth Juror Role**

In the defendant's motion for a new trial, the defendant asked the trial court to evaluate the

sufficiency of the evidence <u>and</u> the weight of the evidence from the thirteenth juror standpoint. The defendant contends that the trial court failed to perform its mandatory function as thirteenth juror. According to the defendant, the trial court should have re-weighed the evidence and set aside the jury's verdict. The defendant claims that the trial court gave undue deference to the jury's resolution of factual conflicts and determinations of witness credibility.

Rule 33(f) of the Tennessee Rules of Criminal Procedure imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case. Tenn. R. Crim. P. 33(f); <u>State v. Carter</u>, 896 S.W.2d 119, 122 (Tenn. 1995). Approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to the imposition of a valid judgment. <u>Id.</u> A trial court's role as a thirteenth juror, however, is distinguishable from its role in evaluating the sufficiency of the evidence. In performing the duties of a thirteenth juror, the trial court is concerned about whether the verdict is supported by the weight of the evidence presented at trial. <u>State v. Moats</u>, 906 S.W.2d 431, 433-35 (Tenn. 1995). The trial court should independently re-weigh the evidence and assess the credibility of the witnesses.

This Court may presume that the trial court has performed its function as thirteenth juror when the trial judge overrules a motion for new trial. <u>Carter</u>, 896 S.W.2d at 122. However, if the record reflects that the trial court was dissatisfied with or disagreed with the jury's verdict or the weight of the evidence, made statements indicating that the trial court misunderstood its responsibility or authority to act as thirteenth juror, or absolved itself of the responsibility of acting as thirteenth juror, this presumption does not apply, and this Court must grant a new trial. <u>Moats</u>, 906 S.W.2d at 434-36.

In the instant case, the trial court, at the hearing on the motion for new trial, made the following comments:

> It was a circumstantial case and it was a case that had to be put together with every strand of circumstance and it went to the jury on a question of whether or not the State had proven beyond a reasonable doubt and the jury so found. And this court is of the opinion that there is sufficient evidence to support that verdict and <u>their evidence was believable. This court has no reason to set aside from the thirteenth juror standpoint either or sufficiency or credibility of the witnesses.</u>
>
> Some of the witness were suspect. Hollerman was in prison and made some statements that were attributed to the defendant and also was cross examined about what might happen to him. Greenwood was in custody and testified that he pled guilty and he was testifying to [make a deal] and was testifying to the truth. Whether it was [the truth] or not was a question for the jury to determine.

(Emphasis added.)

Because the trial court is obligated to make its own determination concerning the credibility of the witnesses, the defendant argues that the trial court's statement that "it was for the jury to determine" the truthfulness of the suspect witness is illustrative of its failure to fulfill the role of thirteenth juror. We disagree. This Court's interpretation of the trial court's findings is that the trial court was addressing both the defendant's insufficient evidence claim and his thirteenth juror claim.

Some of the statements were relevant to the sufficiency analysis and some were relevant to the thirteenth juror analysis. However, it is clear from the trial court's statement that "this court has no reason to set aside from the thirteenth juror standpoint either or [the] sufficiency [of the evidence]" that the trial court recognized that there was a difference. Additionally, the finding that the evidence "was believable" demonstrates that the trial court independently weighed the evidence as a thirteenth juror. Thus, we conclude that the trial court properly fulfilled its role as the thirteenth juror. This issue is without merit.

## CONCLUSION

We conclude that the defendant has failed to prove that he received ineffective assistance of counsel nor does the record preponderate against the trial court's finding that the defendant personally waived his right to testify. Furthermore, our review of the record does not support the defendant's allegations that the trial court erroneously admitted evidence of an uncharged crime or failed to perform its function as thirteenth juror. Finally, the evidence is sufficient to identify the defendant as the perpetrator of the charged offense of aggravated robbery. Consequently, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE